## Addison P. Cook and others v. Milo H. Hopper.

*Trover: Attachment: Evidence: Agreement.* In an action of trover, brought by A against B, C and D, the defendants justified under a writ of attachment in favor of B against one E, which C, as under-sheriff, levied upon the property in question at the direction of D, who, as B's attorney, had sued out the writ. C testified on the trial that he told A he was going to attach the property, and A claimed it as his, and replied to C that if he attached it he must do it on his own responsibility; that A also stated to C that he would give a bond for the release of the property and show it to be his, and afterwards said he had concluded not to give a bond, but should replevy; that A then went with C to get permission to leave the property in the building where it then was, and assisted him in making arrangements for that purpose:—

*Held,*—That such evidence does not prove an agreement between A and C that the property in question might be attached and that the title should be tried afterwards in an action of replevin. A was at liberty, notwithstanding his statements to C, to bring an action of trover, or to seek any other redress than that proposed.

*Liability of officer and attorney in attachment suit: Trespass.* Where the plaintiff in an attachment suit, and his attorney, directed the service of the writ, and after service thereof refused to assent to the release of the property attached when required to by the owner, an action of trespass will lie against them in favor of the owner of the property levied upon, who is not the defendant in such attachment suit, even though they were not present when the attachment was served, and did not in person interfere with the property. Had the attorney merely communicated to the officer the instructions of the plaintiff, the case, as to him, might have been different.

*Trover: Conversion: Attachment levy.* Where an officer levies an attachment upon property not belonging to the defendant in the writ, inventories it, has it appraised, takes possession of the key to the building in which it is stored, and subjects it completely to his control, such intermeddling with the property would constitute a conversion and render him liable.

*Joint liability of plaintiff, attorney and officer for wrongful service of attachment.* In an action of trover, brought against the officer, the attorney and the plaintiff to an attachment suit, for a wrongful service, by their joint acts, of the writ of attachment, upon property of a stranger, it is no answer to their joint liability that, had the taking proved justifiable, only the officer would have had rightful possession.

*Charge to the jury: Presumption in favor of.* A charge to the jury that "if the defendants had in their power and under their control testimony tending to disprove the testimony of the plaintiff, and which, if true, would have disproved it, and failed to introduce such testimony, such failure is a circumstance to be considered by the jury against the defendants, and as corroborating the testimony of the plaintiff and his witnesses on that point," would be unwarranted in some cases, but in others would be eminently proper; and in the absence of any thing in the record showing what the charge had reference to, or how or why it would affect the result, with a bill of exceptions which does not purport to give the whole proceedings, this court must presume that such a state of facts existed as would warrant the instruction given. Courts cannot infer error.—*Taff v. Hosmer*, 14 Mich., 309.

*Evidence: Indebtedness of defendant in attachment.* In an action of trover, for a service of a writ of attachment against another upon the property of the plain-

tiff, it is competent for the plaintiff to disprove the alleged indebtedness of the defendant in attachment.

*Alleged fraudulent transfer: Actual indebtedness necessarily in issue.* Whenever a disposition of property has been made which is alleged to be fraudulent as to creditors, the actual indebtedness is not only in issue but it is the primary fact in logical order for the party attacking the conveyance to establish. It is also important in its bearing upon the probable intent of the parties to the transfer; and the *bona fides* of the transaction cannot be properly tried without going into this subject.

*Heard October 11 and 13. Decided October 24.*

Error to Hillsdale Circuit.

This suit was brought in the court below by Milo H. Hopper, against Addison P. Cook, Harvey Ransom and Christopher J. Dickerson, and was tried by a jury. The trial resulted in a verdict for the plaintiff, upon which judgment was rendered. The defendants bring the cause to this court by writ of error.

*Dickerson & Keating* and *G. V. N. Lothrop*, for plaintiffs in error.

*J. C. Wyllis* and *C. A. Stacy*, for defendant in error.

COOLEY, J.

Hopper, the defendant in error, brought action in the court below against Cook, Dickerson and Ransom, for the unlawful conversion of certain buggies claimed to belong to him. The defendants justified under a writ of attachment in favor of Cook against one Hill, whose property they alleged the buggies to be. Ransom was the officer who served the attachment, and Dickerson the attorney who had taken it out and directed the service.

The plaintiff having given evidence and rested his case, Ransom took the stand as a witness and testified that he told Hopper he was going to attach the buggies, and Hopper claimed the property as his, and said if he went, he must do so on his own responsibility. There was further

conversation between them, and Hopper said he would give a bond for the release of the buggies and show them to be his property. Afterwards he said he had concluded not to give a bond, but should replevy. The buggies were in a building belonging to Mr. Knight. Ransom told Hopper he was sorry to remove the buggies, and Hopper replied he thought he could make arrangements to leave them where they were. He went with Ransom to see Knight, and said to him " Cook has attached our buggies, and Ransom wants to know if they can remain in the shop." Knight said he had already rented the shop to Hill & Hopper. Hopper said he did not want to be responsible for the rent, and Ransom said he or Cook would be. Knight got the key and gave it to Ransom, who said he would not want it long, for Hopper was going to replevy. Hopper, however, did not replevy, but brought the present action before the attachment had been returned.

Upon evidence of which the foregoing is the substance, it was insisted on behalf of the defendants that there was, in effect, an agreement between Hopper and Ransom, that the property might be attached, and that the title should be tried afterwards in an action of replevin. The evidence does not seem to us to lead to this conclusion. Hopper, it is true, told the officer what remedy he proposed to resort to after the latter had executed the purpose he announced of seizing the buggies; but there was nothing like an agreement in this, and there is no reason to suppose the officer's action was at all influenced by the statement. Hopper simply claimed the property as his own, and expressed a determination to take certain action if it should be interfered with; but he was certainly at liberty to seek any other redress if he should find, after taking counsel, that some other was more suitable or effectual. People whose property is seized on writs against others, are very

28 MICH.—65.

apt to talk wildly and threaten desperate measures; but we have never heard it suggested before, that they are bound literally to keep good their word. Certainly one whose feelings and passions are held in control, and who only talks of the milder remedies, is no more bound. What is said under such circumstances is likely to be without deliberation and without counsel, and neither party attaches much importance to it then or afterwards. In law, it is wholly unimportant except as a notification to the officer of the party's claim, and of his purpose to seek redress if his rights are invaded.

Nor do we think that Cook and Dickerson were entitled to a charge that the action of trespass would not lie against them under the circumstances disclosed by the evidence. It is true, they were not present when the attachment was served, and did not, in person, interfere with the property; but the evidence tended to show that each of them directed the service, and that each of them, after it had been made, refused to assent to the property being released. Both were thus active in procuring the service, and together they furnished the writ upon which the seizure was made; and the officer acted as their agent. If Dickerson had merely communicated to the officer the instructions of Cook, the case as to him might have been different; but such does not appear to have been the case.

Nor can it be successfully maintained that there was no such intermeddling with the property as would constitute a conversion. The officer inventoried the property, had it appraised, took possession of the key to the building in which it was stored, and subjected it completely to his control. This was abundantly sufficient to render him liable if his writ did not prove a justification. And although it may be true, as has been argued, that he alone could bring the proper suits for any interference with his

possession, it does not follow that those who directed and procured the seizure are not liable with him for the act. Hopper brought suit against the three for a joint wrong; and it is no answer to the joint liability that two of them are able to show that, had the taking proved justifiable, only the third would have had rightful possession. The jury have found it not justifiable; and the case is placed by that finding on the same footing with any other in which several persons wrongfully intermeddle with property to which they have no right. They are all liable jointly and severally.

It is alleged as error, that the court charged the jury, that "if the defendants had in their power and under their control, testimony tending to disprove the testimony of the plaintiff, and which, if true, would have disproved it, and failed to introduce such testimony, such failure is a circumstance to be considered by the jury against the defendants, and as corroborating the testimony of the plaintiff and his witnesses on that point."

Nothing appears in this record to show what this charge referred to, or how, or why, it would be likely to affect the result. There are certainly cases in which such a charge would be unwarranted. There are others in which such a suppression or concealment of evidence might take place in the presence of the jury as would render it eminently proper. The plaintiffs in error have not shown by their bill of exceptions what the charge had reference to in this case, nor does the bill purport to give us the whole proceedings so that we can judge for ourselves. Under these circumstances, as we cannot infer error, we must presume that such a state of facts existed as would warrant the instruction given.—*Taff v. Hosmer, 14 Mich., 309.*

The objection most relied upon appears to be that the court allowed Hopper to give evidence tending to disprove

the alleged indebtedness of Hill, the defendant in attachment, to Cook, the plaintiff therein. The property attached was shown to have been previously the joint property of Hopper and Hill. Hopper claimed to have bought out Hill, and Cook sought to defeat the purchase by showing that the transaction was a scheme to defraud him. To put himself in position to do this, he gave in evidence the attachment, affidavit and writ; and he then insisted that this affidavit, for the purposes of the present controversy, established in his favor the fact of Hill's indebtedness conclusively, so that the only issue for trial that would remain would be upon the *bona fides* of Hopper's purchase.

The affidavit bears date April 28, 1870, and alleges that Hill "is indebted" to Cook, in the sum of eight hundred and three dollars. It does not state when the indebtedness accrued. The writ of attachment was issued and served on the same day the affidavit was made. The alleged sale by Hill to Hopper was made some days previous to that time, if the witnesses testify truly. Whether made in good faith or not, it was good as between the parties, and could only be avoided by some one whose rights it would injuriously affect. If Cook had no valid claim against Hill at the time of the sale, it was not fraudulent as to him, and the accruing of a subsequent demand would not, under any circumstances which are disclosed by this record, give him the right to question it. But the most he could claim for his affidavit would be, that it established the facts recited in it; and a recital of an indebtedness on April 28, would not be equivalent to an assertion that a like indebtedness existed on any previous day. Presumptions do not reach back in this manner. It follows that Hopper might disprove the existence of any claim at the time of his purchase, without calling in question the truth of the affidavit.

We think, however, that if the affidavit had alleged the existence of the indebtedness at the time of Hopper's purchase, the result should still be the same. The argument for the plaintiffs in error assumes that until the purchaser has established the good faith and legality of his purchase as against creditors, he is not in position to dispute the validity of any claim which is set up; and the point has been discussed as if a finding against his purchase would establish an actual intent to defraud. The real ground, however, on which creditors are allowed to have such transfers set aside, is not necessarily the existence of an actual fraudulent intent, but the tendency they have to delay or defraud creditors seeking the enforcement of their demands. A transfer of property may be eminently just, proper and reasonable in itself, and nevertheless be voidable, because in a legal sense creditors would be defrauded by it, and the court in setting it aside will overturn equities only for the purpose of enforcing the superior equities of others. Such might be the case with almost any proper family settlement; and also in other cases in which gifts are made upon strong moral considerations. It would be most manifest injustice to permit a third person to intervene in such a case and set aside an arrangement which is unobjectionable and even laudable, provided it affects no creditor injuriously, on a bare assertion that he is a creditor, unless the other party was allowed the privilege of putting this assertion to the proof; and if a rule were established permitting such intervention, it would be reasonable to anticipate its being sometimes made use of by a dishonest party who, having repented of a just settlement, would be enabled to set it aside through the manufacture of fictitious claims in favor of a confederate.

Wherever a disposition of property has been made which is alleged to be fraudulent as to creditors, the actual

indebtedness is not only in issue, but it is the primary
fact in logical order for the party relying upon the alleged
frauds to establish. Moreover the question of actual indebt-
edness is most important in its bearing upon the probable
intent of the parties to the transfer; and the *bona fides* of
the transaction cannot be properly tried without going into
it. Proof on the subject would, therefore, be admissible as
bearing upon the question of fraud, even if the indebtedness
were not involved in the main issue. And a mere *ex parte*
affidavit which investigation may, and often does, prove to
be unfounded, can never be allowed to establish conclu-
sively the affiant's case upon such an issue, when the effect
would be to take away the rights of one who is a stranger
to the proceeding in which the affidavit is made, and who
consequently cannot take issue upon the indebtedness there.
The necessity for the attaching creditor making good his
claim by other proof, in a case like the present, was assumed
by *Thayer v. Willet, 5 Bosw., 368,* and directly affirmed in
*Rinchey v. Stryker, 28 N. Y., 51.*

It was suggested on the argument that the effect may
sometimes be, that the creditor will in one suit fail to
establish his claim to the satisfaction of a jury, while in
the other the finding may be in favor of it. This, though
possible, is not to be presumed; and if such a thing shall
take place, it is no more than may happen in any two
cases in which the same facts may be in issue. Such cases
frequently arise, and sometimes reach different conclusions;
but the possibility that they may is no sufficient reason for
holding a party bound, upon a point most material to his
right, by the *ex parte* oath of his adversary, whom he is
not allowed to contradict or to question.

We say nothing here as to the effect that should be
given to the judgment, after one has been rendered in the
attachment proceedings. No question of the kind arises in

the present case, and we only hold that the affidavit in attachment does not establish the fact of indebtedness as against third parties.

These views answer the objections taken to the rulings of the circuit judge. Finding no error in the record, the judgment is affirmed with costs.

CAMPBELL, CH. J., and GRAVES, J., concurred.

CHRISTIANCY, J., concurred in the result.