54 | 169
90 | 6

[No. 5,870.]

## SHAY v. McNAMARA ET AL.

TAX TITLE—ATTORNEY-IN-FACT—FRAUD.—S. having been furnished with money by J. to pay the taxes on J.'s homestead, failed to do so, and in consequence the land was sold for taxes to another, who afterward, by the procurement of S., and for his benefit, assigned the certificate to M.; and M., having received the tax deed, conveyed the land for the benefit of S., and by his direction, to S.'s wife. Afterward, S. holding a power of attorney from J. to sell and convey the lot, executed a deed of conveyance of it in fee to M., in the name of J., but without consideration, and for his own benefit. *Held*, in an action by the wife of S. against the wife of J. and her tenant, that both deeds were fraudulent and void, and that the plaintiff derived no title under them.

ESTOPPEL — FORMER JUDGMENT — PRIVY—DEFINITION.—A judgment is an estoppel only as to parties and privies; and those only are privies whose interest in the subject-matter of the suit originated subsequently to its commencement.

ID.— ID.— TRUSTEE AND CESTUI QUE TRUST.—As a general rule, trustees and *cestuis que trustent* are regarded as so independent that proceedings against one do not affect the other.

ID.—ID.—RELATION.—The doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice.

ID.—ID.—ID.—PRIVY—RESULTING TRUST.—Accordingly, where one K. had purchased the homestead of defendant and her husband at a foreclosure sale at their request, and received a certificate of sale: *Held*, that a judgment recovered against K. by the plaintiff's grantor, in an action to quiet title, did not bind the defendant—whether the money paid by K. at the foreclosure sale was paid on his own account, or advanced as a loan to the mortgagors; that if the former was the case, the defendant and her husband derived no title or interest from K., and consequently were not his privies; that if the latter was the case, a trust resulted in their favor, but that they were not bound by the judgment against their trustee; and *held, further*, that the doctrine of relation could not be resorted to for the purpose of establishing the title of K. as of the date of the foreclosure sale, and of thus holding the defendants bound by the judgment against him.

APPEAL from a judgment for defendants in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

The facts are stated in the opinion.

*Jarboe & Harrison*, for Appellant.

By the sale under the decree in foreclosure, all the interest that the mortgagors had on the 11th day of January, 1866, (the date of the mortgage) or at any time thereafter, was transferred to Kelly. This transfer was absolute, subject to be defeated only by a redemption from the sale; but inasmuch as no redemption was made, the execution of the Sheriff's deed on the 19th of November, 1872, established the title of Kelly as of the date of the sale, viz., March 18th, 1872, and transferred to him as of that date all the interest of the said Johnson and his wife Johanna, defendants in this action. (*Page* v. *Rogers*, 31 Cal. 293 ; *Carpentier* v. *Brenham*, 40 Id. 221.)

The fact that the purchase was made at the verbal request of Johnson and wife, did not give them any rights in the land, or in any way affect the interest of Kelly.

Kelly acquired, therefore, the title of the defendants, and they have no rights except under him; and they are, therefore, bound by the judgment against him.

The defendants cannot avail themselves of any breach of trust by Shay in failing to pay the taxes. By the tax deed the title in fee-simple to the premises passed to him. The Court does not find there was any privity between the defendant Johanna and Shay. It does find, that long before the money was given to Shay by her husband, she had deserted him. Whatever breach of faith Shay may have been guilty of toward the husband, the defendant cannot claim any rights thereunder. The wrongs done to Thomas do not constitute any equity in favor of Johanna.

*John J. Williams*, for Respondent.

The defendant Johanna is entitled to recover and retain the judgment in her favor, unless she is cut off by the judgment of Morgans against Kelly.

A judgment is conclusive only as to the parties and their successors in interest subsequent to the commencement of the action. (Code Civ. Proc. § 1908.) Mrs. Johnson was not a party or a privy. (Code Civ. Proc. §§ 1908, 1910; 1 Greenl. Ev. § 189; Bigelow on Estoppel, 74–81; Herman's Law of Estoppel, § 46.) She acquired no title from Kelly. A judgment against an assignee is not conclusive against an assignor, nor a judgment against a vendee conclusive against a vendor. The title did not get into Kelly until the Sheriff's deed was made, which was long after the judgment in *Morgans* v. *Stearns*. (*Gron* v. *Fowler*, 21 Cal. 392; *Bernal* v. *Gleim*, 33 Id. 668.) How then can the judgment affect the rights which were in Mrs. Johnson when the action was commenced, and the judgment was recovered? (Code Civ. Proc. § 1911; *Campbell* v. *Hall*, 16 N. Y. 575.)

Department No. 1, Ross, J.:

Thomas C. and Johanna Johnson were married October 24th, 1858. On the 10th of January, 1866, the lot of land in con-

troversy was conveyed to Thomas—the consideration therefor being paid out of their common property. On the next day Johnson and wife united in the execution of a mortgage on the lot to the California Building and Loan Society, to secure the payment of a certain sum of money. The money not having been paid, an action was afterward commenced in the Twelfth District Court to foreclose the mortgage, to which action Johnson and wife were made parties defendant; and such proceedings were had in that action, that on the 22nd of March, 1872, a decree of foreclosure, in the usual form, was duly entered. Under this decree the lot in question was sold by the Sheriff on May 17th, 1872, to one Michael J. Kelly, who made the purchase at the verbal request of, and for, Johnson and wife. The purchase-money was advanced by Kelly out of his own funds at the request of, and for, Johnson and wife, and the money so advanced is still due and owing to him from them. On the day of sale the Sheriff, at the request of Michael, executed to his brother, Martin Kelly, a certificate of purchase for the lot. August 17th, 1867, Johnson and wife declared a homestead upon the premises.

In 1870, and before the taxes for the fiscal year 1870–71 became delinquent, Thomas C. Johnson "furnished" to one Bartholomew J. Shay, the husband of the plaintiff, sufficient money to pay the taxes on the lot for that fiscal year, and Bartholomew undertook and promised to pay the taxes. He, however, failed to do so, and in consequence of such default the taxes became delinquent; and on the 3rd day of January, 1871, the lot was sold by the Tax Collector, for taxes, to one Murdock, who received the tax certificate therefor. On the 18th of May, 1872, Murdock assigned the tax certificate to one Charles H. Morgans, who on the same day, (the time for redemption having expired) received a deed for the lot from the Tax Collector. The consideration for the assignment of the tax certificate by Murdock to Morgans was paid by Bartholomew J. Shay, and the assignment of the certificate, as also the tax deed, was made to Morgans by the procurement and for the benefit of Bartholomew. On the 22nd of May, 1872, Morgans, at the request of Bartholomew J. Shay, and without

any consideration paid to him, executed to the plaintiff, Mary A. Shay, a deed for the lot, which deed expressed the consideration of "love and affection," and was in reality for the benefit of Bartholomew. On the day previous to the execution of the deed to plaintiff, that is to say, on the 21st of May, 1872, Morgans commenced an action in the Nineteenth District Court against Martin Kelly and two fictitious defendants, to quiet his alleged title to the lot. Kelly answered in the action, denying title in Morgans, and setting up his own rights, under the Sheriff's certificate, which he averred was the only interest he had in the property. A trial was afterward had, resulting in the entry, on the 8th of August, 1872, of a decree in favor of Morgans, adjudging him to be the owner in fee of the premises, and enjoining Martin Kelly and all persons claiming under him from asserting any interest therein, and especially from setting up any rights under the Sheriff's certificate of sale, or by virtue of any deed issued thereon.

After the entry of this decree, namely, on the 19th of November, 1872, the Sheriff executed to Martin Kelly a deed for the lot.

On the 24th of January, 1872, Thomas C. Johnson executed to Bartholomew J. Shay a power of attorney, authorizing the latter to sell and convey the lot. On the 7th of November thereafter, Bartholomew J. Shay, by virtue of the power thus conferred, executed to Morgans a deed for the lot, which deed expressed a consideration of one dollar, but was, in fact, made without any consideration, and without the knowledge of Morgans, and in reality for the benefit of Bartholomew J. Shay.

The defendant, McNamara, is a tenant in possession under Johanna Johnson, and the present action is ejectment, brought in the name of Mary A. Shay, to recover possession of the lot from McNamara and Johanna. The defendants answered, denying title in plaintiff, and also filed a cross-complaint averring, substantially, the facts above detailed, which were by the Court below found to be true. The appeal is from the judgment, on the judgment roll; and the plaintiff, who is the appellant, relies for a reversal, first, upon the tax sale, and the conveyances made thereunder, and secondly, upon the decree in the

suit of *Morgans* v. *Kelly*, as being conclusive upon the rights of the present parties.

1st. The facts, as found by the Court below, present a case of palpable fraud upon the part of Bartholomew J. Shay, and as the case is presented, we cannot review the questions of fact. Neither Morgans nor the plaintiff was a purchaser in good faith or for value, and neither of them acquired any interest in the property in question. In their connection with the transaction, both were mere instruments of Bartholomew J. Shay in his fraudulent attempt to acquire the property of Johnson and wife, and the Court below correctly adjudged null and void the deeds mentioned in the decree.

2nd. Nor are the defendants concluded, or in any way affected by the judgment in *Morgans* v. *Kelly*. In bringing that action, Morgans was but the representative of Bartholomew J. Shay. At the time it was commenced, the legal title to the lot was in Johnson and wife. Neither of them was made a party to the action, and, of course, unless they are privies, neither is in any way bound by it. The only real defendant to the action was Martin Kelly, the holder of the Sheriff's certificate of purchase; and the only claim he set up, in his answer therein, was such rights as arose under the certificate.

It was claimed, at the argument, on behalf of appellant, and is also claimed in the brief on file, that the money paid by Martin J. Kelly for the lot at the foreclosure sale was paid out of his own funds, and was not a loan to Johnson and wife, and that, therefore, there could be no resulting trust in their favor. If that be so, then it follows that Johnson and wife derived no title or interest under either of the Kellys, and cannot therefore be privies.

But, on the other hand, if the advance by Michael J. Kelly be considered a loan to Johnson and wife, and it be further considered that with the money so loaned he made the purchase at their request and for their benefit, the result must remain the same. In that view, there arose, *upon the purchase*, a resulting trust in favor of Johnson and wife, and Martin Kelly thereupon took the certificate of purchase in trust for them. This was the *origin* of whatever interest the Johnsons acquired under the Kel-

lys; and having originated before the commencement of the suit of *Morgans* v. *Kelly*, it follows that they are unaffected by the judgment in that action; for only those are privies whose interest in the subject-matter of the suit originated *subsequent* to its commencement.    (Freeman on Judgments, § 162; *Campbell* v. *Hall*, 16 N. Y. 575-9; *Doe* v. *The Earl of Derby*, 1 Ad. & E. 783; *Winslow* v. *Grindell*, 2 Greenl. 64; 2 Smith's Leading Cases, p. 825.)

Treating Martin Kelly as a trustee for the Johnsons, the present case does not come within any of the exceptions to the general rule, that trustees and their *cestuis que trust* are regarded as. being so independent that proceedings against one have no effect upon the other.   In addition to their equity, they held *the legal title* at the time of the commencement of the suit of *Morgans* v. *Kelly*, as also at the time the judgment in that case was entered.

It is said, however, for appellant, that the subsequent execution of the Sheriff's deed established the title of Martin Kelly to the premises as of the date of the foreclosure sale, and transferred to him, as of the date of the mortgage, all the interest of the Johnsons; and that the judgment in *Morgans* v. *Kelly* relates to the time of the commencement of that action, and establishes the respective rights of the parties as of that date. But this would be putting the doctrine of relation to a use not sanctioned by law.   That doctrine, as observed by the Supreme Court of the United States in *Gibson* v. *Chouteau*, 13 Wall. 101, "is a fiction of law, adopted by the courts solely for the purposes of justice;" and we think it cannot be resorted to in this case, for the purpose of holding the defendants bound by the judgment in favor of the representative of Bartholomew J. Shay.   The judgment must be affirmed, and it is so ordered.