### SEYMOUR v. WALLACE.

1. ESTATES OF DECEDENTS—BILL BY ADMINISTRATOR TO SET ASIDE DEED — WITNESSES—MATTERS WITHIN DECEDENT'S KNOWLEDGE.
   In a suit by an administrator against a grantee of decedent to set aside a deed which, upon its face, purports to be made in consideration of the payment of the grantor's debts, defendant is incompetent, under 3 Comp. Laws 1897, § 10212, to testify that the debts to be paid by him were specified by the grantor, and did not include the claims in suit.

2. SAME—FRAUDULENT CONVEYANCES — CONCLUSIVENESS OF JUDGMENT.
   On a bill by an administrator, under 3 Comp. Laws 1897, § 9363, to set aside a conveyance by decedent of her real estate as in fraud of creditors, defendant is not concluded by the allowance of the claims of such creditors in probate proceedings to which he was not a party, but may show their invalidity as a defense to the suit.

Appeal from Washtenaw; Kinne, J.   Submitted June 9, 1899.   Decided September 27, 1899.

Bill by William B. Seymour, administrator of the estate of Frances E. Wallace, deceased, against Jacob L. Wallace and Betsy Gates, to set aside certain deeds, and to subject the property conveyed to the payment of claims against the estate. From a decree for complainant, defendants appeal. Reversed.

*John P. Kirk* (*J. Willard Babbitt*, of counsel), for complainant.

*Hinckley & Hinckley*, for defendants.

Hooker, J.    Frances E. Wallace, being the owner of the premises in question, made a deed of the same to her brother, Jacob L. Wallace, on November 7, 1895.    This deed recited that it was made "in consideration of the sum of maintenance, expenses of sickness and funeral, and debts; when paid, this deed to be delivered; to be in hand paid by the party of the second part, the receipt whereof is hereby confessed and acknowledged."    It provided, further, that "the grantor reserves the use of said property her lifetime," etc.; and it concluded with full covenants of warranty.    The deed was left in the hands of Mr. Hinckley, a lawyer, and the grantee was informed of the facts a few days later by the grantor.    She died early in 1896, and the grantee paid several hundred dollars for her maintenance, care, funeral expenses, and debts.    It does not appear when or under what circumstances the deed was delivered.    On August 13, 1896, he conveyed the premises to defendant Gates.    On August 18, 1896, the complainant was appointed administrator of the estate of Frances E. Wallace, deceased.    It appears that she had no estate, except this property, but in February, 1897, two claims were allowed, viz., one in favor of a Dr. Murdock, of $118.60, and another of $4.    Defendant Wallace refused to pay these, and the administrator filed the bill in this cause, under 3 Comp. Laws 1897, § 9363, which reads as follows:

"When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall, in his lifetime, have conveyed any real estate, or any right or interest therein, with the intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or shall have so conveyed such estate that by law the deeds or conveyances are void as against creditors, the executor or administrator may, and it shall be his duty to, commence, and prosecute to final judgment, any proper action or suit, at law or in chancery, for the

recovery of the same, and may recover, for the benefit of the creditors, all such real estate so fraudulently conveyed; and may also, for the benefit of the creditors, sue and recover for all goods, chattels, rights, or credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance."

The learned circuit judge made a decree in accordance with the prayer of the bill.

We find nothing in the testimony that indicates that this property was conveyed in fraud of creditors, whether it was a homestead or not; and, if the complainant is entitled to a decree, it is because the premises were conveyed upon the condition that the grantee should pay all of the grantor's debts. It is contended that the debts were specified, and that they did not include these claims; but this is based upon the testimony of Wallace, which the statute (3 Comp. Laws 1897, § 10212) excludes. From the face of the deed, we think we must find that all debts were contemplated. Hence, if these were valid claims, the land must be held subject to them.

The defendants sought to show that they were not valid claims, that the alleged services were not performed, and that deceased had performed services for Dr. Murdock which fully compensated him for any claim he might have, and that the $4 claim was barred by the statute of limitations, which, it was said, appeared upon its face. This last claim appears to have been lost sight of; but the trial judge excluded the proof offered against the Murdock claim, upon the ground that its validity had been adjudicated, and could not be attacked collaterally. Defendant Wallace had a contract right to this title upon paying the items named as consideration. He was under no obligation to pay any but valid debts, and he claims that he could not be concluded by an adjudication of their validity without an opportunity to be heard. He was not a party to the probate proceedings,—perhaps did not know of them. He claims that, before there were any probate

proceedings, he had paid the consideration, and title had vested, the deed having been delivered. If these claims against the estate were fictitious, his assertion is true.

The claimant has an indisputable right to satisfaction of his judgment from the property which belongs to the estate, as the judgment is valid against the estate, and he has no right to satisfaction from property belonging to the defendant; but claimant's counsel contend that this property does not belong to the defendant, because their client has, since its transfer, obtained a judgment against the grantor. Thus, it is sought to give this judgment the effect of a judgment *in rem*, to all intents and purposes. Had the action been ejectment to recover the land, the defendant would not have been bound by it. His rights would have been secure against a judgment in any action to which he was not a party. They should be secure against an indirect attack. At the time the proceedings which resulted in claimant's judgment were commenced, the defendant had rights in the property sought to be reached. If the claimant's theory is true, his title was subject to the payment of this claim, because it was a debt due from the grantor. If defendant's contention is true, there was no liability against him, because there was no such debt. The proposition contended for by claimant's counsel does violence to the elementary doctrine that a person shall not be devested of his legal rights without an opportunity of being heard in his defense. In Bigelow, Estop. 142, it is said that, "to make a man a privy to an action, he must have acquired an interest in the subject-matter of the action either by inheritance, succession, or purchase from a party subsequently to the action, or he must hold the property subordinately." In this case the defendant is not a privy to the judgment, unless he can be said to hold the property subordinately to this claim; and that necessarily depends upon the validity of the claim, which is a question of fact, which he should have the right to be heard upon.

In *Mathes* v. *Cover*, 43 Iowa, 512, it was held that a

grantee of land was not affected by a judgment concerning the property against his grantor in the suit of a third person, begun after the grant.   See *Shay* v. *McNamara*, 54 Cal. 169; *Campbell* v. *Hall*, 16 N. Y. 575.   In *Brigham* v. *Fayerweather*, 140 Mass. 411, Mr. Justice Holmes uses the following language:

"We may lay on one side, then, any argument based on the misleading expression that all the world are parties to a proceeding *in rem*.   This does not mean that all the world are entitled to be heard, and, as strangers in interest are not entitled to be heard, there is no reason why they should be bound by the findings of fact, although bound to admit the title or *status* which the judgment establishes."

In *Coles* v. *Allen*, 64 Ala. 105, it was said by Brickell, C. J.:

"The purpose of the bill is a confirmation of the title the mortgagees acquired indirectly through the purchase made by Mitchell at the sale under the power in the mortgage executed by Connor, and to remove the cloud cast upon the title by the decree obtained by Mrs. Coles against Connor subsequent to the execution of the mortgage.   It is only as between parties and privies that a judgment or decree is final and conclusive of the matters in controversy, or, collaterally, evidence of the facts upon which it may be founded.   '*Res inter alios acta alteri nocere non debet*' is an inflexible maxim in its application to judicial proceedings, shielding the stranger from injury, while it precludes him from taking benefits under judgments or decrees to which he was not a party, in the absence of any relation of privity with the parties which made him answerable for the results of the litigation.   No alienee, grantee, or assignee is bound or affected by a judgment or decree rendered in a suit commenced against the alienor, grantor, or assignor subsequent to the alienation, grant, or assignment; for the plain reason that otherwise his rights of property could be devested without his consent, and the fraud or laches of the grantor could work a forfeiture of estates he had created by the most solemn conveyances. Whatever may be the force and effect of the judgment or decree against the grantor, if it is sought to be used to the prejudice of the grantee, there must be independent, distinct evidence of the facts which authorized its rendition."

In *Winslow* v. *Grindal*, 2 Greenl. 64, the court held that "the grantee of land is not bound by a judgment in a suit commenced *after* such grant by his own grantor against *his* immediate grantor upon the covenants in his deed." Again, it has been held that "the assignee of a note given for part of the consideration of a contract of sale will not be affected by a subsequent judicial rescission of. the contract in a proceeding to which he was not a party." *Powers* v. *Heath*, 20 Mo. 319. In *Bartero* v. *Savings Bank*, 10 Mo. App. 76, it was held that "one who was not served and who did not appear is not concluded by a judgment  *  *  *  for the recovery of dower." McCrary, J., said in *Weed Sewing-Machine Co.* v. *Baker*, 1 McCrary, 580:

"It is very clear that no one can be bound by a judg-ment or decree unless he be a party or in privity with a party. This for the reason that he has had no opportunity to be heard, to cross-examine witnesses, or to offer evidence in furtherance of his rights. It is therefore held that while a decree may be admissible in evidence to prove the fact of its rendition, with all its legitimate consequences, it cannot affect in the least the rights of any but parties and privies. A party in possession of land, claiming an interest as purchaser or under a contract to purchase, is not in privity with his grantor. On the contrary, his claim is adverse to his grantor; and it must follow that he is not bound by a decree against the latter, in a case to which he is not a party, and rendered in a suit commenced after he purchased and took possession."

The following language of Mr. Justice Hoar in the case of *Inman* v. *Mead*, 97 Mass. 314, is pertinent:

"The jury may have found for the demandant on the ground that the conveyance was fraudulent against cred-itors. The statute enables creditors to levy upon land which has been thus conveyed, although the debtor has no remaining interest in it which he could enforce in any manner. The demandant went further in his allegation and in his evidence, but the jury may not have been satis-fied of anything more than that the conveyance to Cook was intended to defraud creditors. If that were all, as Daniels himself would have no remaining interest in the

land, Cook would have a right to hold it against every one but an actual creditor; and, upon the question whether the demandant was really a creditor, it is obvious, according to the most elementary notions of justice, that the defendant would not be concluded by a judgment of which he had no notice, to which he was not privy, and against which he had never an opportunity to be heard. His position is, not that the demandant has not a valid judgment against Daniels, which Daniels cannot contest, but that the demandant was not a creditor, and so could not be defrauded. The right to show that the judgment was recovered by fraud or collusion, which is conceded, tests the principle involved. The demandant cannot by any consent of his own, nor by any proceeding to which the tenant is not a party, give the rights of a creditor to one who is not a creditor. The importance of the principle will appear more strongly when we consider that one who has received a conveyance in fraud of creditors may lose his property, although he has paid for it its full value. To disturb his title, the fact that he who levies upon the land is a creditor must be established against him; and it has never been established, except in a suit against another party, and after his title accrued. On the ground that the judgment against Daniels was not conclusive proof against the defendant that the demandant was a creditor of Daniels at the time of its rendition, the exceptions are sustained."

See, also, *De Mora* v. *Concha*, 29 Ch. Div. 268.

The language of Mr. Justice COOLEY in the case of *Cook* v. *Hopper*, 23 Mich. 511, is significant, though the question under consideration arose upon attachment, and did not involve a judgment. He said:

" A transfer of property may be eminently just, proper, and reasonable in itself, and nevertheless be voidable, because, in a legal sense, creditors would be defrauded by it; and the court, in setting it aside, will overturn equities only for the purpose of enforcing the superior equities of others. Such might be the case with almost any proper family settlement, and also in other cases in which gifts are made upon strong moral considerations. It would be most manifest injustice to permit a third person to intervene in such a case, and set aside an arrangement which is unobjectionable and even laudable, provided it affects

no creditor injuriously, on a bare assertion that he is a creditor, unless the other party was allowed the privilege of putting this assertion to the proof; and, if a rule were established permitting such intervention, it would be reasonable to anticipate its being sometimes made use of by a dishonest party, who, having repented of a just settlement, would be enabled to set it aside through the manufacture of fictitious claims in favor of a confederate.

"Wherever a disposition of property has been made which is alleged to be fraudulent as to creditors, the actual indebtedness is not only in issue, but it is the primary fact in logical order for the party relying upon the alleged frauds to establish. Moreover, the question of actual indebtedness is most important in its bearing upon the probable intent of the parties to the transfer, and the *bona fides* of the transaction cannot be properly tried without going into it. Proof on the subject would there-fore be admissible, as bearing upon the question of fraud, even if the indebtedness were not involved in the main issue. And a mere *ex parte* affidavit, which investigation may and often does prove to be unfounded, can never be allowed to establish conclusively the affiant's case upon such an issue, when the effect would be to take away the rights of one who is a stranger to the proceeding in which the affidavit is made, and who consequently cannot take issue upon the indebtedness there. The necessity for the attaching creditor making good his claim by other proof in a case like the present was assumed by *Thayer* v. *Willet*, 5 Bosw. 368, and directly affirmed in *Rinchey* v. *Stryker*, 28 N. Y. 51 (84 Am. Dec. 324)."

The defendants' proofs having been excluded, we cannot pass upon the question.

The decree is reversed, and the case remanded for another hearing, with costs of this court to the defendants.

The other Justices concurred.