STATE BANK OF SEVIER v. AMERICAN CEMENT & PLASTER CO. et al.

No. 5175.   Decided May 9, 1932.   (10 P. [2d] 1065.)

*Thatcher & Young,* of Ogden, for appellant.

*Hutchinson & Hutchinson, H. D. Moyle, Hamilton Gardner,* and *L. I. Layton,* all of Salt Lake City, for respondent.

FOLLAND, J.

Plaintiff, as the owner of the fee-simple title, and in possession of the property, brought this suit to quiet title to a certain cement mill, the land on which it is located, and a group of unpatented mining claims, all in Sevier county, Utah.

The State Bank of Sevier, as owner, made a contract June 2, 1928, with Amos Epperson and C. R. Jones, as trustees for the American Keene Cement Company, a corporation to be thereafter organized, wherein the vendor agreed to sell and the vendees agreed to buy the cement plant and property in question for $21,000, payment to be made in eight installments over a period of 4½ years. The purchasers went into possession and operated the plant until January 11, 1930. Installments of principal amounting to $6,000 were paid.

The appellant, American Cement & Plaster Company, had for some time prior to June 2, 1928, been in possession and had operated the cement properties under a contract to purchase from the State Bank of Sevier, but for failure to make payments when due the contract was rescinded and possession of the property taken by the bank. Then followed the contract of June 2, 1928, wherein the bank became the vendor and Jones and Epperson trustees for the American Keene Cement Company, the vendees. The American Keene Cement Company was thereafter organized, and took

possession and operated the property. All payments made to the bank on this contract were made by Jones, Epperson, or the American Keene Cement Company.

In June of 1929 the American Cement & Plaster Company, its individual directors, and some of the stockholders commenced an action in the district court of Salt Lake county against Epperson, Jones, and the American Keene Cement Company, in which suit, after trial, the court found that the contract of June 2, 1928, while made ostensibly with Epperson and Jones, as trustees for the American Keene Cement Company, was in fact made with Jones and Epperson, as trustees for the American Cement & Plaster company. The court entered judgment December 30, 1929, wherein the American Cement & Plaster Company was adjudged and decreed to be the owner of the contract of June 2, 1928, and entitled to all rights and benefits thereunder including the right of possession of the premises.

The bank was not a party to this suit. When, on January 1, 1930, no payment of the $3,000 installment was made to the bank as required by the contract, it made demand on the vendees for payment of principal and interest, and the general taxes for 1929 which had not been paid and had become delinquent. No further payments were made or demanded, and on January 8th the bank served its written notice of rescission and forfeiture upon Epperson, Jones, and the American Keene Cement Company, but did not make any demand on the American Cement & Plaster Company, nor give it notice of the termination of the contract. Jones, Epperson, and the American Keene Cement Company, who were in possession of the property, peaceably gave up possession to the bank January 11, 1930, pursuant to the demands of the written notice.

May 14, 1930, the bank commenced this suit to quiet its title to the cement properties in question. The defendants may be referred to in three groups: First, Jones, Epperson, and the American Keene Cement Company, hereafter re-

ferred to as Epperson et al., the vendees in the contract of June 2, 1930; second, the American Cement & Plaster Company and individual directors, hereinafter referred to as the cement company; and, third, J. V. Jarrett and other stockholders of the American Cement & Plaster Company, and the Columbia Trust Company. We need be concerned only with the bank as plaintiff, Epperson et al., and the cement company as defendants. The other defendants either disclaimed any interest or claimed an interest identified with that of the cement company.

The complaint is in the usual form, alleging that plaintiff is the owner and entitled to the immediate possession of the property, which is particularly described, alleging that the defendants each and severally claim some right, title, and interest in and to the property adverse to plaintiff, all of which claims are wholly without right, and praying that its title be quieted as against all claims of defendants and each of them. The defendants Amos Epperson, C. R. Jones, and the American Keene Cement Company filed no answer to plaintiff's complaint, and their default was duly entered.

The cement company filed an answer and counterclaim to plaintiff's complaint and a cross-complaint against the defendants Epperson et al., wherein it was alleged that the bank was the owner of the premises subject to the contract of June 2, 1928, and that after the last-mentioned date the right of possession was vested in Epperson et al. who, pursuant to the contract, took possession, occupied, enjoyed, and operated it continuously thereafter until on or about January 8, 1930.

It was further alleged that, although the contract was ostensibly with Epperson and Jones, as trustees for the American Keene Cement Company, it was in truth and in fact with them as trustees for the use and benefit of the cement company, and all the rights and benefits acquired by them in and to and, under the contract were at all times the rights and benefits of the cement company, all of which

was known to the plaintiff, and all of which had been judicially established and determined on the 30th of December, 1929, by decree of the district court of Salt Lake county in case No. 43992. A copy of the findings of fact, conclusions of law, and such decree was attached and made part thereof. It further alleged that the plaintiff bank and defendants Epperson et al., well knowing that the rights of Epperson et al. were impressed with a trust for the use and benefit of the defendant cement company, connived, conspired, confederated, and concertedly acted wrongfully and fraudulently to evade and defeat the trust so established, and so acting together terminated and forfeited the contract of June 2d, and all rights of the defendants thereunder, and that plaintiff, with notice and knowledge of its interest, failed to demand of the cement company payment of the installment due in January, 1930, and failed to give it any notice of intention to forfeit the installments paid on the contract.

It was also alleged that, since the organization of the cement company in 1922, the bank, in successive written agreements with it, repeatedly and many times waived payments of installments strictly when due according to the terms of said contracts, and also waived the right to forfeit and rescind the several successive contracts, and thereby induced defendant to believe that plaintiff would not require strict compliance with the contract in controversy, and by reason thereof the plaintiff ought to be, and in equity and good conscience it is, estopped from enforcing, invoking, or claiming any forfeiture for failure to pay promptly the amount due January 1, 1930.

It was further alleged that plaintiff well knew that Epperson et al had, ever since the initiation of cause No. 43992 in the district court of Salt Lake county, persistently and consistently in said cause and elsewhere and otherwise denied, repudiated, and disclaimed the existence of any trust relation or trust obligation between them and the cement company with respect to the contract or cement property,

and that the pretended forfeiture was merely a colorable device whereby the bank and Epperson et al. sought to fraudulently evade and nullify the contract and defeat the cement company out of its rights in the contract and to the property involved. That on April 28, 1930, it had offered to pay and tendered to the bank $4,900, principal and interest, on the contract, and now offers so to do. Other allegations set out a claim for damages. The cement company nowhere alleged that it had been in possession of the premises since June 2, 1928, except as it claimed the possession of Epperson et al. was its possession, and nowhere alleged any obligation or responsibility on its part under the contract toward the bank.

Plaintiff filed a reply to the counterclaim, and defendants Epperson et al. filed an answer denying most of the allegations of the cross-complaint, but set up no claim to the property. They alleged that an appeal had been prosecuted from the Salt Lake decree which was then pending in the Supreme Court, and admitted that they had always denied any trust relation between them and the cement company.

The case was tried to the court. After trial but before decision the defendant cement company filed a praecipe for dismissal wherein it moved the court to dismiss with prejudice its cross-complaint against defendants C. R. Jones, Amos Epperson, and the American Keene Cement Company, and the cross-complaint was by the court thereupon dismissed as to those defendants. The court thereupon made findings and entered judgment in favor of the plaintiff and against the defendant, and quieted the title to premises in plaintiff bank. From the judgment against the cement company it appeals.

Appellant files twenty-two assignments of error, but they are grouped for argument and may be disposed of under five general heads.

Appellant predicates error on the action of the trial court in permitting respondent to file a reply to its counterclaim after a lapse of more than ten days from service and filing

thereof. No prejudice on that account has been shown to have been suffered by appellant. The time of the filing of pleadings is largely a matter within the discretion of the trial court, and, where the opposite party has not been prejudiced, no error can be predicated on permission to file a pleading out of time. *Taylor* v. *Los Angeles & S. L. R. Co.*, 61 Utah 524, 216 P. 239.

Appellants moved the trial court for an abatement of the action when objection was made at the trial that the Salt Lake decree, upon which it relied as fixing its interest in the subject-matter, was not yet final because pending in the Supreme Court on appeal. The bank was not a party to the Salt Lake suit and was not precluded thereby as to any rights it had with respect to the contract. The issue therein was whether the cement company or Epperson et al. were the beneficial owners of the contract wherein the bank was vendor and Epperson et al. vendees. The bank was not interested in that controversy except as its result might control whom it must deal with as vendee. The bank was not required to stand by for an indefinite time, in the absence of payment of installments due under the contract, until other parties litigated to a conclusion their claimed rights in the contract of purchase.

No error was committed by the trial court's refusal to abate or continue the trial of the cause.

Several assignments of error are based on the theory advanced by appellant that the contract in question was in reality an equitable mortgage, and therefore that appellants' rights could not be terminated except by foreclosure. Offers were made of deeds and contracts between the bank and American Gypsum Products Company, a corporation, not a party to the suit, but through which the appellants claimed some rights as assignee. The evidence, however, shows that all these dealings had terminated prior to the time of making the contract of June 2, 1928. Ordinarily, all prior transactions are merged in an unambiguous written contract. *Halloran-Judge Trust Co.* v. *Heath*, 70

Utah 124, 258 P. 342, 64 A. L. R. 368. The contract of June 2, 1928, was pleaded and relied on by both parties, and no effort was made to reform its terms. Appellant's contention is negatived and defeated by its pleading in its answer wherein it admits that plaintiff is the owner of the legal title to the property in question, and the allegation in its counter-claim: "That on the second day of June, 1928, plaintiff was the owner of the properties described in plaintiff's complaint and that it then entered into a written contract, * * * wherein and whereby the right of possession of all said property was as of and after that date vested in Epperson and Jones."

Another and sufficient reason is that there is no pleading to support the contention that the contract was in reality an equitable mortgage. As we have seen, appellants rely on the contract as one of sale and attack the termination and forfeiture attempted by the bank as ■ void and ineffective, because no demand for payment or notice of forfeiture was served on it prior to the time the bank took possession on January 11, 1930, or at any other time. This brings us to the most vital point in the case which may be discussed under two heads: (1) Was the contract forfeited and terminated for failure to pay the installment of January 1, 1930, interest and taxes, and (2) were the parties, that is, the bank and Epperson et al., guilty of fraudulently conspiring together to defeat the decree of the district court of Salt Lake county?

Was the contract terminated and payments forfeited? It is not disputed that a payment of principal and interest was due January 1, 1930, and that it was not paid or payment tendered by any one on or about the due date, and also that the 1929 taxes were not paid by the vendees, but were paid by the bank January 3, 1930. The contract provides as follows:

"In the event of a failure on the part of the buyer to make the payments aforesaid, or any of them, at any time herein specified, or to comply with any of the terms of this agreement the seller may,

at its option, then or at any time thereafter, without notice to the buyer, declare the entire remaining balance due and payable, and may, by appropriate action, proceed to enforce the payment of the balance then due as against said buyer, or his assigns. If said seller prefers so to do, it may, at any time after default in any payment aforesaid, or at any time after breach by the buyer of any of the covenants or conditions of this contract, declare the entire amount theretofore paid by said buyer forfeited as liquidated damages for the breach of this agreement, and upon exercise of such option on the part of said seller, all payments theretofore made by the buyer, on account of this contract, shall be forfeited the seller as liquidated damages and this contract shall thereupon become null and void, and all rights of the buyer hereunder shall thereupon cease and determine. * * *"

"Time is the essence of this agreement."

The vendor adopted the second alternative and declared a forfeiture and termination of the contract.

It is undisputed that three of the four prior installments were not paid promptly on the due date, but were made by vendees and received by the vendor from several days to a month after the date specified in the contract. The contract by its terms does not expressly provide with respect to notice of forfeiture. Appellant contends under these circumstances, notwithstanding the express provisions of the contract that time is of the essence, that mere default does not work a termination, but that some affirmative action on the part of the vendor is required, and because the vendor did not insist on strict compliance as to time, in the payment of former installments, it cannot declare a forfeiture immediately upon default, but must give notice of intention to forfeit and allow a reasonable time for performance. *Letinsky* v. *Smith*, 220 Mich. 465, 190 N. W. 229; *Kohler* v. *Lundberg*, 54 Utah 339, 180 P. 590.

The trial court made findings that on January 1, 1930, "plaintiff demanded payment of $3,000 due and owing on January 1, 1930, from the defendants Jones and Epperson and the American Keene Cement Company," that they failed to pay that sum or any part thereof, and that "plaintiff elected under the terms of the contract" to declare a forfei-

ture of the contract and served written notice thereof on said defendants and forfeited as liquidated damages all payments theretofore received under the contract, and thereafter on January 11, 1930, demanded and received possession of the property from Jones, Epperson, and the American Keene Cement Company. If the rule contended for is applicable, still it was fully complied with by the demand on and notice to the vendees named in the contract, unless, under the circumstances, it was obligatory on vendor to also make demand on and give notice to the cement company. If there were any deficiencies in the notice of forfeiture, or if the time given was not reasonable, such deficiencies were, as to them, waived by the vendees when possession of the property was peaceably delivered to the vendor and the forfeiture thereby completed. The named vendees are not entitled to complain of any defect in the forfeiture, and indeed they do not now complain, but filed no answer to plaintiff's complaint and permitted their default to be entered and judgment to go against them and to become final. As between the bank, as vendor, and Epperson et al., vendees, the contract has been terminated and payments theretofore made forfeited. 2 Black on Rescission and Cancellation (2d Ed.) 1122.

The trial court made findings that "plaintiff did not demand of the defendant, the American Cement and Plaster Company, the payment of the purchase price due under said contract on the 1st day of January, 1930," nor give such defendant any notice of its election under said contract to cancel the same and to forfeit the payments made thereunder, and that such defendant "was not entitled to receive such notice or demand or either."

It is urged by appellant that, because the bank made no demand on it for payment and gave no notice to it of forfeiture and termination of the contract, the notice and forfeiture were abortive and failed to terminate the contract. If appellant was entitled to have such demand and notice, it is because of the judgment of the

Salt Lake court decreeing to it the beneficial ownership of the contract. The trial court made no finding as to knowledge or notice to respondent of the Salt Lake decree. The evidence shows, however, that the bank's cashier knew of the pendency of the suit in the Salt Lake court, and that a decree had been rendered favorable to appellant, but a copy of the decree was not served on the bank until after it had declared the contract forfeited and had taken possession. Even if it were shown that the bank through its officers had knowledge of the rendition of the decree, yet we hold that the bank was not obliged to treat the cement company as the owner of the contract. The decree was not final, because subject to appeal, and an appeal was in fact taken and was pending at the time of the trial. Appellant in its counterclaim alleged that the vendees Jones and Epperson "were persistently and continuously" denying, repudiating, and disclaiming that the cement company had any such interest in the contract as it claimed.

The appellant rests its claim of interest in the contract or cement property on the Salt Lake decree. By this judgment it seeks to bind the bank in respect of its dealings with the contracted property. No evidence of its interest was offered except the Salt Lake decree.

It is the rule in this state that an action is pending until final determination on appeal, or until the time to appeal is passed (Comp. Laws Utah 1917, § 7220), and a judgment is not final before the expiration of the time of appeal, and hence is not admissible in evidence for the purpose of showing title to property in controversy or as a bar to another action between the same parties, *Vance* v. *Heath*, 42 Utah 148, 129 P. 365; 2 Freeman on Judgments, 1528; 2 Cal. Jur. 412; and a judgment, even though final, is not admissible in a subsequent action to create a lien or interest in property adverse to the right of one who was not a party to the suit, *Hilton* v. *Snyder*, 37 Utah 384, 108 P. 698, Ann. Cas. 1912C, 241; *Tierney* v. *Phoenix Ins. Co. of Brooklyn*, 4 N. D. 565, 62 N. W. 642, 36

L. R. A. 760; *McCamant* v. *Roberts*, 66 Tex. 260, 1 S. W. 260. The rule is stated in R. C. L. as follows:

"Upon established principles, a judgment binds and is admissible against parties to the suit in which it is rendered; and privies are, of course, bound, as they are the representatives of the real parties; but beyond these a judgment in personam is evidence only of the fact of its own rendition,—it may not be introduced to establish the facts upon which it has been rendered. It is an axiom of the law, that no man shall be affected by proceedings to which he is a stranger— to which, if he is a party, he must be bound." 10 R. C. L. 1116.

A grantor or vendor is not in privity with the vendee and is not bound as to third persons by any judgment which they may obtain against the vendee adjudicating the title. 1 Freeman on Judgments 969; *Butler* v. *Fryer*, 59 Okl. 274, 159 P. 367; *Seymour* v. *Wallace*, 121 Mich. 402, 80 N. W. 242.

It has been held that a vendor is under no duty to make demand on or serve notice of forfeiture on the vendee's judgment creditor. *Paschke* v. *C. W. Adams Lumber Co.*, 169 Minn. 445, 211 N. W. 827.

Appellant contends that, where the vendor knows that others claim an interest in the contract of sale, then he must give notice to them. In support of this statement it cites *Letinsky* v. *Smith*, 220 Mich. 465, 190 N. W. 229; *Williams* v. *Corey*, 21 N. D. 509, 131 N. W. 457, Ann. Cas. 1913B, 731; *Clayton* v. *Savings Co.*, 89 Ind. App. 431, 155 N. E. 539; *Canon* v. *Scott* (Tex. Civ. App.) 230 S. W. 1042; *Zadigan* v. *Gard,*, 223 Mich. 147, 193 N. W. 783; *Smith* v. *Russell*, 20 Colo. App. 554, 80 P. 474. These cases do not support the proposition as stated, but are authority for the rule that, where a vendee assigns his interest in a contract, with notice to the vendor, or the assignee is in possession, then a forfeiture cannot be affected without notice to such assignee. That, however, is not this case.

Mere knowledge that another claims some interest is not sufficient to place an obligation on the vendor to give notice to such claimant. *Bishop* v. *Barndt,* 43 Cal. App. 149, 184 P. 901; *Hage* v. *Benner*, 111 Minn. 365,

127 N. W. 3; *Christopherson* v. *Harrington,* 118 Minn. 42, 136 N. W. 289, 41 L. R. A. (N. S.) 276; *Bedtelyon* v. *Otis Orchards Co.,* 106 Wash. 151, 179 P. 96.

The cement company, had it desired to exercise its claimed rights in and under the contract and the decree, was under the duty of at least making timely tender of the amount due in order to keep the contract alive.  This it did not do. The court made findings that the cement company at no time prior to the bringing of this suit made tender of the amount due under the contract.  Appellant attacks this finding on the ground that it is contrary to the evidence.  Some evidence was introduced by appellant tending to prove that a tender had been made by it in April of 1930 of the amount which became due January 1, 1930, with interest to that date, but this was denied by the witness for the bank.  The evidence as to a tender does not so preponderate in favor of appellant as to justify us in disturbing the finding of the trial court.

The notice to the vendees was valid and effectual unless the result of fraud and collusion between the bank, and Epperson et al. for the purpose of defeating the rights of the cement company.  Appellant, by its counterclaim and cross-complaint, alleged that the bank and Epperson et al. fraudulently conspired together to defeat its rights under the Salt Lake decree, and that pursuant to such conspiracy these parties acting together accomplished the forfeiture and recission, and sought to have the forfeiture and rescission declared void and of no effect. The trial court made a finding to the effect that there was no such conspiracy.  The finding is claimed to be erroneous and not supported by evidence.  The reading of the record, however, discloses no evidence of any illegal or unlawful act of the respondent, or any direct evidence of conspiracy to defeat the appellant in the enjoyment of any of its rights. If fraud existed at all, it must be inferred from the circumstances of respondent's demand on the vendees, Epperson et al., for payment and notice to them of forfeiture and

recision and demand for possession of the premises without making such demand and giving such notice to appellant. This the respondent had a right to do, and it was undoubtedly under the contract entitled to have its money installment paid on the date fixed, and in default thereof to declare a forfeiture and rescind the contract. It was under the circumstances not bound to give notice to appellant, or to demand of it payment of the installment. If appellant had timely tendered the amount due under the contract, it would have been in a better position to insist, as it does, that respondent deal with it as owner of the contract, and yet, had the bank done so, to the exclusion of the vendees, it would have proceeded at its peril at least until the judgment of the Salt Lake court had become final.

The claim of conspiracy, however, is conclusively answered by the fact that prior to the making and entering of findings of fact and judgment the appellant by ex parte motion asked for a dismissal of its cross-complaint, with prejudice to another action, against Epperson, ▪ Jones, and the American Keene Cement Company, and judgment to that effect was duly entered by the court before the entry of judgment in favor of respondent. It necessarily follows that a charge of conspiracy cannot be sustained as against one alleged conspirator in the face of a judgment which has become final exonerating the other parties to the alleged conspiracy. With a judgment of dismissal as to all of the parties, except respondent, to the alleged conspiracy to fraudulently work a forfeiture of the contract, the action likewise fails as to respondent. It alone cannot be guilty of a conspiracy to defraud. *St. Louis S. W. Ry. Co.* v. *Thompson,* 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250; *Collins* v. *Cronin,* 117 Pa. 35, 11 A. 869.

Other alleged errors have been assigned, but because of the conclusion we have reached they need not be discussed.

The judgment is affirmed, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.